1

2

3

4

5

6

7

8        IN THE UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
9                    AT SEATTLE

10

11   ELEANOR G. GABRIEL,

12              Plaintiff,                      CASE NO.  C04-2105RSL
        v.
13                                             REPORT AND
     JO ANNE B. BARNHART,                      RECOMMENDATION
14   Commissioner of Social Security,

15              Defendant.

16

17       Plaintiff appeals to the District Court from a final decision of the Commissioner of the Social

18   Security Administration ("the Commissioner") denying her application for Supplemental Security

19   Income disability benefits under Title XVI of the Social Security Act.  For the reasons set forth

20   below, it is recommended that the Commissioner's decision be REVERSED and REMANDED for

21   the payment of benefits.

22                          I.   PROCEDURAL HISTORY

23       Plaintiff Eleanor Gabriel filed an application for supplemental security income disability (SSI)

24   benefits on March 14, 2000.  Tr. 97-100.  She alleges disability from August, 1985 due to

25

26   REPORT AND RECOMMENDATION - 1

depression, emotional and mental health problems.  Tr. 97, 102.  Her application was denied at the initial level [Tr. 74-77] and upon reconsideration.  Tr. 79-81.  Plaintiff requested a hearing before an administrative law judge (ALJ), which was granted.  Tr. 82, 84.  On September 12, 2001, Ms. Gabriel, medical expert Prasanna Pati M.D., and vocational expert William Weiss testified at a hearing before ALJ Arthur Joyner.  Tr. 29-71.  Plaintiff was represented by attorney Steven Robey. On January 14, 2002, the ALJ issued an unfavorable decision. Tr. 18-22.  Plaintiff sought Appeals Council review on January 25, 2002 .  Tr. 10, 185-86.  The Appeals Council denied Plaintiff's request for review [Tr. 5-8], making the ALJ's decision the Commissioner's final decision.  20 C.F.R. §§ 416.1481, 422.210.  Plaintiff sought judicial review in this Court, represented by David Namba.  On April 11, 2003, a Stipulation and Order for Remand was entered in the United States District Court.  Tr. 218-20.  On June 6, 2003, the Appeals Council vacated the hearing decision and remanded the case for further proceedings.  While her case was being reviewed in the district court, Plaintiff filed a second application for SSI and was found disabled and eligible for benefits beginning June 27, 2002.[1]  Tr. 223.  On May 18, 2004, a hearing on the first application was held in Bellingham before ALJ Ruperta Alexis. Plaintiff was represented by Steven Robey.  Plaintiff and vocational expert Robert Aslan testified. Tr. 274-312.  The ALJ issued Plaintiff an unfavorable decision on August 30, 2004.  Plaintiff filed a timely complaint in U. S. District Court seeking judicial review of the Commissioner's final decision.

## II.     THE PARTIES' POSITIONS

Plaintiff alleges that the ALJ's finding that Plaintiff's diagnosed mental retardation and affective disorder do not meet or equal any listing is contrary to law, and not supported by substantial evidence.  The Plaintiff also contends that the ALJ reached her  decision by erroneously rejecting the psychological evidence and opinions from Plaintiff's treating counselors, and from Dr.

---

[1]     Plaintiff is seeking a closed period of disability from March 14, 2000 through June 26, 2002.

1  Kathleen Mayer.  The Commissioner maintains that the ALJ's decision is supported by substantial

2  evidence and is free of legal error.

3                                    III.    STANDARD OF REVIEW

4          This Court may set aside the Commissioner's denial of social security disability benefits when

5  the ALJ's findings are based on legal error or are not supported by substantial evidence.  *Magallanes*

6  *v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  Substantial evidence means more than a scintilla, but

7  less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate

8  to support a conclusion.  *Id.*  To determine whether substantial evidence supports the ALJ's

9  decision, we must consider the evidence as a whole, weighing both evidence that supports, and

10  evidence that detracts from the ALJ's conclusion.  *Id.*  The ALJ is responsible for determining

11  credibility, resolving conflicts in the testimony, and resolving ambiguities.  *Id.* Where evidence is

12  susceptible of more than one rational interpretation, it is the ALJ's decision that must be upheld).  *Id.*

13                          IV.    THE SEQUENTIAL EVALUATION PROCESS

14          The claimant bears the burden of proving that she is disabled.  *Meanel v. Apfel*, 172 F.3d

15  1111, 1113 (9th Cir. 1999).  Disability is defined as the inability to engage in any substantial gainful

16  activity by reason of any medically determinable physical or mental impairment which can be

17  expected to result in death or which has lasted, or can be expected to last, for a continuous period of

18  not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

19          The Social Security regulations set forth a five-step sequential evaluation process for

20  determining whether a claimant is disabled under the Social Security Act.  <u>Bowen v. Yuckert</u>, 482

21  U.S. 137, 140 (1987); 20 C.F.R § 416.920.  At step one, the claimant must establish that he is not

22  engaging in any substantial gainful activity.  *Id.* At step two, the claimant must demonstrate that he

23  has one or more severe impairments.  *Id.*  At step three, the Commissioner will determine whether

24  the claimant's impairment meets or equals any of the listed impairments described in the regulations.

25  *Id.*  At step four, if the claimant's impairment(s) neither meets nor equals one of the listed

26  REPORT AND RECOMMENDATION - 3

impairments, the Commissioner will then evaluate the Claimant's residual functional capacity and

past relevant work.  If claimant is not able to perform his past relevant work, the burden shifts to the

Commissioner at step five to identify jobs existing in significant numbers in the national economy that

the claimant can perform given her residual functional capacity, age, education, and work experience.

*Tackett v. Apfel*, 180 F.3d 1094, 10100 (9th Cir. 1999).  If a claimant is determined to be disabled at

any stage of the process, there is no need to consider subsequent steps.  *Id.*  at 1099.

## V.    SUMMARY OF THE RECORD AND THE ALJ's DECISION

Ms. Gabriel was 53 years old at the time of her second hearing.  Tr. 278.  She did not

complete high school  Tr. 278.  Her last work was as a receptionist in 1985 and cashier in the late

80's.  Tr. 103, 214, 280, 299, 303.

A.    Plaintiff's testimony.

At the hearing, the Plaintiff testified regarding  the impact of her impairments on her

activities of daily living.  Plaintiff testified that she took amytriptyline for her depression [Tr. 281]

and that she had trouble remembering things [Tr. 282] and getting to sleep.  Tr. 285.  Plaintiff

testified that she visited her cousin daily [Tr. 286], did chores and walked her dog.  Tr. 287.  Plaintiff

testified that she drives to the grocery store and doctor's appointments and visits friends.  Tr. 300.

Plaintiff further testified that she became angry and frustrated on the job [Tr. 287-89] and that she

brought that anger home with her and took it out on her kids.  Tr. 289, 296.  Upon questioning by

the ALJ, Plaintiff testified that she couldn't handle work as a receptionist because she couldn't

handle all the calls that came in.  Tr. 289.  Plaintiff testified that it was hard for her to meet

strangers, and she became nervous around them. Tr. 288-89.  When asked why she couldn't work,

Plaintiff responded "that would be two jobs that I would have to do and I can barely make the one

job" [Tr, 290-91].[2]  Plaintiff also testified that it was hard for her to remember her job duties.  Tr.

_____

[2]Plaintiff referred to taking care of her children as a job. [Tr. 291].

REPORT AND RECOMMENDATION - 4

291.

B.      The Hypothetical and the VE's Testimony

After determining the Plaintiff's residual functional capacity, the ALJ asked the VE to identify the Plaintiff's past relevant work.  Tr. 303.  The VE responded, " receptionist,... cashier."  Tr. 305.  The VE found that during the relevant period the Claimant was "49 to 51."  *Id.*  In phrasing the hypothetical, the ALJ stated,

[A]ssuming the Claimant was capable of performing work at light range of activity.  The Claimant has some non-exertional limitations and restrictions as follows: "The Claimant would not have any difficulty in being able to understand and remember short, simple instructions.  The Claimant would not have any difficulty in carrying out short, simple instructions.  The Claimant would have some difficulty in being able to understand and remember detailed and complex instructions.  So, three or more steps she would have difficulty with.  She would have also difficulty in carrying out those instructions.  So, if we limit the Claimant to one to three-step instructions that's probably safe. ...  The Claimant would work best in a job that was very routine where she did not have to exercise a lot of independent judgment in how she carried out the work performance.  She could be trained to do the job and then could do it without a lot of independent judgment.  She would work best in an environment in which she could – which she had limited interaction – superficial interaction okay but limited interaction with members of the public, with supervisors, with coworkers.  And she would also perform best in jobs where she had just a stable work situation without a lot of changes from the daily routine and a daily work setting.  So, assuming these limitations or restrictions, what impact first on past relevant work? Tr.305-306.

The VE testified that Plaintiff could not perform her past relevant work as a receptionist.  *Id.* The VE testified that Plaintiff could perform the assembly jobs of cannery worker, line worker [Tr. 306-07], and bottle line attendant.  Tr. 307.  The VE classified the jobs as light duty and repetitive in nature.  *Id.*

The ALJ's next hypothetical assumed Plaintiff's testimony to be credible, and incorporated Plaintiff's alleged hearing loss, reading and math limitations and difficulty with independent judgment.  Tr. 308.   The VE testified that the jobs of cashier and receptionist require "the ability to make judgments in terms of dealing with the public, types of cash/credit transactions...and changing situations."  Tr. 308-09.  The VE expressed that noise level would be a concern.  *Id.*

Plaintiff's counsel asked the VE, assuming a claimant in the first hypothetical would have

REPORT AND RECOMMENDATION - 5

1    moderate difficulty responding appropriately to pressures in a work setting, "specifically assuming

2    troubles maintaining a pace or attention to a task," would that affect the claimant's ability to perform

3    the jobs identified by the VE.  Tr. 309-10.  The VE responded "possibly."  Tr. 310.  The VE further

4    conceded that assuming the truth of Ms. Gabriel's testimony about not dealing with stress or her own

5    frustrations at work, "that may very well be possible that it would impact her employability"  Tr. 311.

6    C.      The ALJ's Findings

7            Based on an evaluation of the evidence, the ALJ found at step one that Ms. Gabriel had not

8    engaged in substantial gainful activity since her alleged disability onset date of March 14, 2000.  Tr.

9    216, F. 1.  At step two, the ALJ found that Ms. Gabriel has severe impairments of depression/dys-

10   thymia, mild mental retardation, and degenerative disc disease  Tr. 211.  At step three, the ALJ found

11   that Plaintiff's impairments did not meet or equal the requirements of a listed impairment.  Tr. 212,

12   216 at F.3.  The ALJ then, at step four, determined that Plaintiff could not perform her past relevant

13   work but had the residual functional capacity (RFC) to perform light work.  Tr. 216, 217.  At step

14   five the ALJ found that Plaintiff was not disabled, as she could perform other work existing in

15   significant numbers in the economy.  Tr. 217.

16                                      VI.     DISCUSSION

17   A.      The ALJ Improperly Rejected Plaintiff's IQ Scores

18           Plaintiff argues that the ALJ failed to give a specific, legitimate reason for rejecting Dr.

19   Mayers' IQ testing and assessment. [Plaintiff's Opening Brief p. 17].  The Commissioner argues that

20   the ALJ pointed to evidence that contradicted Mayers' IQ scores.

21           Listing 12.05 for mental retardation specifies that "the required level of severity for this

22   disorder is met when the requirements in [paragraphs] A, B, C, or D are satisfied.  Paragraph C of the

23   listing is satisfied if the claimant's verbal, performance, or full scale IQ is between 60 and 70, and the

24   claimant has a physical or other mental impairment which imposes an additional and significant work

25   related limitation of function.  *Id*.  Pursuant to the Appeals Council remand order, Kathleen Mayers,

26   REPORT AND RECOMMENDATION - 6

1   Ph.D., performed a full clinical psychological health examination and administered several psychiatric

2   tests.  Tr. 241-50.  The Intelligence Quotient ("IQ") test results showed that Plaintiff had mild mental

3   retardation with a verbal score of 67, and a full scale of 69.  Tr. 245.  Both fall within the range

4   specified in paragraph C.   Plaintiff also has dysthymia and degenerative disc disease, both of which

5   the ALJ found to be severe.   Tr. 211.  Dr. Mayers' testing shows that Plaintiff has below average

6   functioning in memory, concentration, abstract thinking, judgment, insight, and functions at an

7   extremely slow pace.  Tr. 243-44, 245-48**.** Dr. Mayers also indicated that "she is not very adaptable

8   or very skilled....she tends to be very confused and communicates very poorly."  Tr. 248, 250.

9          The ALJ determined that the Plaintiff's mental retardation did not meet 12.05C of the

10   Listings.  Tr. 212.  The ALJ rejected Dr. Mayers WAIS-III finding by reasoning that the "scores are

11   suspect" and that the IQ scores did not accurately represent Plaintiff's actual ability  Tr. 212 solely

12   because Dr. Mayers concluded that Plaintiff "can perform multi-step directions and comprehend and

13   follow simple and complex tasks."  Tr. 212, 244, 248.  From the following discussion, it appears to

14   the Court that the ALJ ignored several aspects of Dr. Mayers' report regarding Plaintiff's functional

15   ability, as well as ignoring or rejecting the reports of Heidi Henken and Breck Ketchum which

16   corroborate Dr. Mayers assessment of Plaintiff's functioning.

17          1. Other source evidence

18          The Commissioner argues that Heidi Henken and Breck Ketchum were not acceptable medical

19   sources, and were incompetent to provide diagnoses or other medical opinions.  See 20 C.F.R. §

20   416.913(a).  The Commissioner also argues that Ms. Henken and Mr. Ketchum's conclusions that

21   Plaintiff was not employable due to her impairments "are not observations that assist the ALJ in

22   determining Plaintiff's level of functioning.  Rather, these are their opinions on a legal definition of

23   disability, one that is reserved to the Commissioner, and such opinions "are not given any special

24   significance." (Defendant's Brief at 14).

25          Once an impairment is established with evidence from an acceptable medical source, the SSA

26   REPORT AND RECOMMENDATION - 7

1  may consider evidence from "other sources" to "show the severity of your impairment(s) and how it

2  affects your ability to work." 20 C.F.R.  404.1513(d)(1); 416.913(d)(1).  Other sources include (1)

3  medical sources not listed in paragraph (a) ... (for example, nurse-practitioners, physicians'

4  assistants...and therapists.  Therapist Heidi Henken and Breck Ketchum qualify as "other sources"

5  under the regulations

6       2.  Heidi Henken and Breck Ketchum

7       Heidi Henken counseled Plaintiff for depression at the Nooksak Tribal Center and assessed

8  the effect of Plaintiff's depression on her functioning ability.  Heidi Henken's May 24, 2000 mental

9  status report indicated Plaintiff's "affect was within normal limits, her recent and immediate memories

10  were normal, and her remote memory was not always believable." Tr. 150, 214.  The ALJ relied

11  upon this as evidence that Plaintiff had no significant impact in functioning. Tr. 214.  It is not just this

12  portion, but Henken's entire report that is relevant here.  Henken's report reflects consideration of

13  numerous other factors.[3]  For example, Henken stated that Plaintiff's "speech patterns frequently

14  show aspects of alogia, being abstract and associational, content poor, and difficult to follow." Tr.

15  144.  This is consistent with Dr. Mayers' assessment that Plaintiff scored a verbal IQ of 67, at the low

16  end of the borderline retarded range.  Ms. Henken noted that Plaintiff's impairments caused Plaintiff

17  to make "frequent mistakes in her attempts at various tasks." Tr. 144.

18       This opinion corroborates Dr. Mayers assessment that Plaintiff  "tended to get confused and

19  stated that she "got lost" when performing some tasks. Tr. 242.  Ms. Henken found Plaintiff to be

20  easily distracted, with a "low ability to successfully handle stressful situations, resulting in difficulty

21  staying on task." Tr. 151.  Ms. Henken concluded that Plaintiff's chances of "functioning consistently

22  or in any kind of long-term way in an employment environment are extremely poor." Tr. 154.  It was

23

24       [3] Ms. Henken also assessed Plaintiff's ability to manage funds; concentration and task
25  persistence; stress tolerance/deterioration and decompensation; social functioning; stream of mental
   activity, content of thought, mood, orientation, intelligence, judgment and insight. Tr.150-153.

26  REPORT AND RECOMMENDATION - 8

1   Ms. Henken's clinical opinion that Plaintiff could not "successfully manage ongoing regular

2   employment" because "it takes everything Eleanor has to maintain functioning at her current level."

3   Tr. 148.  Ms. Henken's observations regarding the effect of Plaintiff's depression on her ability to

4   function are entitled to weight.  The ALJ failed to give specific and legitimate reasons for rejecting

5   Ms. Henken's opinion regarding the severity of Plaintiff's impairments.

6           Also in the record are the notes of Breck Ketchum, a certified mental health counselor.  Tr.

7   172.[4]   In March 2001, Mr. Ketchum evaluated Plaintiff for the effects of depression on her

8   employability.  Tr. 172.  Mr. Ketchum noted that Plaintiff continued to be depressed, and experienced

9   "stress when interacting with people."  Tr. 172.  It was Breck Ketchum' opinion that: "I do not feel at

10  this time that Ms. Gabriel will be able to maintain gainful employment for a number of reasons.  The

11  symptoms of depression appear to be long standing and appear to impact Ms. Gabriel severely.  She

12  has memory impairments and often speaks in a vague manner that is difficult to track..."  Tr. 173.  His

13  assessment of Plaintiff's memory functioning and speech impairments agree with Dr. Mayers'.

14          An ALJ must consider all of the significant probative evidence of record.  Vincent ex rel.

15  Vincent v. Hecker, 739 F.2d 1393, 1395 (9th Cir. 1984).  Here, the ALJ gave no reasons for ignoring

16  Mr. Ketchum's opinion.  Although the ALJ need not accept the ultimate conclusion of Plaintiff's

17  employability offered by Henken and Ketchum, their observations  regarding her functioning are

18  probative.  The ALJ failed to set forth specific and legitimate reasons for rejecting Ketchum's

19  observations regarding the severity of Plaintiff's functional limitations.

20          B.      Evaluation of Plaintiff's ADHD at Step Two

21          Plaintiff contends that the ALJ failed to properly establish all of Plaintiff's severe mental

22  impairments.  Heidi Henken counseled Plaintiff for depression at the Nooksak Indian Tribal Center

23  from June, 1999 to May 2000.  Tr. 144.  The ALJ rejected Ms. Henken's diagnosis of ADHD

24  _____

25          [4] The identical report appears at Tr. 176-179 dated November 19, 2000.

26  REPORT AND RECOMMENDATION - 9

1   because Dr. Parlatore stated that neurometric testing would be required to substantiate the diagnosis.

2   Tr. 182, 211.  The Commissioner states no authority for the proposition that neurometric testing is

3   required to establish ADHD.  Accordingly, it appears that the ALJ failed to give specific and

4   legitimate reasons for rejecting Ms. Henken's ADHD diagnosis.  Because we reject and remand for

5   an award of benefits, the Court need not remand for further proceedings on this basis.

6                               VII.    CONCLUSION

7           The ALJ did not consider all of the limitations identified by Plaintiff's treatment providers and

8   examining physicians.  Thus, the ALJ's conclusion that the scores are suspect is not in accordance

9   with the objective medical findings.  The IQ tests show that Plaintiff satisfied the requirements of

10  Listing 12.05C.  Tr. 241-249.  This alone demonstrates that the ALJ's  interpretation of the medical

11  evidence was not reasonable.  The ALJ did not provide *specific and legitimate reasons* for rejecting

12  Dr. Mayers' IQ testing results**,** and thus her decision is contrary to law.  Accordingly, the

13  Commissioner's final decision is not based on substantial evidence and free of legal error.   I

14  recommend that the district court REMAND for payment of benefits for a closed period of disability.

15          DATED this 18th day of November, 2005.

16

17          _____

18          MONICA J. BENTON
            United States Magistrate Judge

19

20

21

22

23

24

25

26  REPORT AND RECOMMENDATION - 10